And the next case on calendar is Irish v. Magnussen Home Furnishings, 18-55650. Each side will have 15 minutes. Good morning, Your Honors. David Swicklaw appearing on behalf of the appellant plaintiff, Robert Irish. I just want to make a couple of, highlight a couple of points. The Dynamex ABC test, we don't believe that the defendant, Magnussen, can escape the fact that the presumption that Mr. Irish was an employee based upon the Dynamex ABC test, which this Ninth Circuit has said in Vasquez recently in May 2, 2019, is retroactive. But Dynamex applies to wage order claims, and this isn't a wage order claim, right? It is not. So I'm not sure we should need to be talking about Dynamex? It discusses, though, the history of classification of an employee versus an independent contractor. But there are lots of other cases that do, too. So is there anything in particular about Dynamex that's, I mean, to the extent Dynamex is different, I don't think Dynamex applies here. And otherwise, it's just repeating what other cases said. Okay. Then our fallback position is the Borrello case, which is the control case. It seems like Borrello case is what you should be talking about. Correct. And so basically, we've identified all the issues of control. We established tribal issues of fact, which should have precluded the summary judgment. Can I ask a question about that? How far does that go for tribal issues of fact? If I recall correctly, our case law says that whether you're an independent contractor or an employee is a question of law. Is that right? Ultimately, that is a question of law. Yes. And if there's undisputed facts, it remains a question of law. If there's disputed facts that would potentially change the outcome, then it becomes a question of fact. So how far do we need to go with that? Because here, I mean, is your position that any time there's a disputed fact on any of the factors that go into right to control, it becomes a question of fact? That's our position, yes. Summary judgment, yes. Well, but don't you have to look at that in the context of all of the factors and say, I mean, if there's six factors that weigh in favor of him being an independent contractor, and one that's disputed, wouldn't you just say, okay, we're going to assume that a reasonable jury could find that that factor weighs in favor of an employee. But even if we look at that as a legal matter, he's still an independent contractor. That's a potential conflict that exists, yes. What do you mean that's a potential conflict? I mean, I think the point is that the fact dispute needs to be material. And if the fact dispute only goes to one factor, say, in 20, and the other 19 go the other way, then it's not a material fact dispute, right? I would agree with that. Okay. I think in this case, we've established, I don't know, identified 32 by themselves. So can you tell us which fact disputes you think there are and what factors they go to, so we understand why you think they're material? Well, the major one is control. Did Magnuson have control over Mr. Irish's performance in his position as a sales rep? And they basically controlled every aspect. But what do you think the dispute is? What's the fact dispute about control? Is it whether he could be fired or not? They're saying he got up in the morning whenever he wanted to, got home, and worked whatever he wanted to. There was no schedule. The Magnuson didn't give him a specific schedule. That seems undisputed. That's correct. But he did work 12 to 16 hours per day, and he had to meet a certain quota every year. But that's not inconsistent with him being an independent contractor. I mean, where's the dispute? Let me just cut to the chase, and then maybe there's more. It looks like the decision-making authority over who the employee may hire was disputed. That's correct. And so let me ask you about termination, whether he could be terminated. I've got to be honest. I don't understand that factor at all under California law, but it seems to be a factor. And what weight does that play in this? If he didn't meet his quotas and do his job, he would be fired. But why does that make him an employee? That's what I don't understand about California. That's the obvious control, I would think. If you don't do your job, you're fired. A contractor, if they're not doing what they're contracting for, presumably you terminate the contract. So this is a very odd factor. Well, again, he was there for 25 years, which is not consistent with an independent contractor. That is definitely a factor in your favor. Well, I come from a little bit different background. I mean, I was at a company where we had many independent contractors who'd been with the company for 25 years. So I don't – I think you're right. That's what California law says, but I don't understand the rationale behind it. But is that enough to – to me, there's not a – there's no dispute. There's no dispute about whether he'd been there 25 years. So that's just another factor on the board that we have to look at and then say, as a legal matter, is this enough? That he was on call 24-7, 365. That's another factor in determining whether or not he was an employee. The fact that Magnuson would not let him sell – initially they let him sell to other furniture establishments, but then they said, no, we want you to be exclusive to Magnuson. So, again, they're capturing him, and you're, like, my employee. We want you to do what we want, not what you want. So what about this idea – and this is – I don't want to say it's dispositive, but in my mind it almost becomes this way. He never got paid. There was never a check that was made to your client in his name. He set up a company, and it was paid to the company, and then he took the wages out. So, number one, he never received a W-2, which may or may not be – I mean, California law, again, has a certain view on that that I don't necessarily agree with. But what I do think is pretty compelling, I'm just not aware of an employee that is a corporation. I can't envision where that would ever happen. We cited the Frankel case, which said that just because he incorporated did not change his status. Well, but I read that case differently. I read that to be you could have a dual status, but that would imply, if there's a dual status, that certain money was flowing to the company and certain money was flowing to the employee. Here you don't have any money flowing to the employee. Are we wrong about that? Is there a dispute of fact where there's a check that went to Irish? No, there is not. So I don't find that case helpful. He says, I'm going to do the work. Here's how I want to get paid because of other reasons. Instead of paying me directly, pay FSA, his corporation. That has nothing to do with his job duties. We're looking at his job duties. No, but how could he be an employee? And maybe your point is they were, in theory, they could have been wages that he assigned to another entity. So maybe there is a way around this, but it seemed odd. I've never heard of an employee being a corporation. Any other questions? I'll reserve my time. Good morning, Raul. Martin is for Magnuson. Let me touch on the question of fact versus question of law issue. What troubles me is that if there's a dispute among the various factors, because you have multiple factors. You have the control issue and then you have the restatement additional issues. You wouldn't give to a jury the role of deciding how to weigh those factors. That's a decision for the judge. Well, say there was a dispute of fact about all of the factors. Would it then go to a jury? You would have the jury resolve the underpinning, each individual factor that's disputed. You could do it that way and then have the court, as a matter of law, based on the jury's finding of that particular factor, how it would apply to this case. Or you could instruct the jury that if you find this, then you must find that. You could do that. But I would think in a case that involves factual disputes on the various factors, you may have a very complicated verdict form instructing the jury what to do if they find X, Y, or Z. But I think the ultimate problem is that it's a policy decision that you make as to whether it's an independent contractor or an employee. It's not a jury question. Jurors don't go to law school. They don't know the cases. Only a judge can look at Borrello and look at Dynamite. So then it raises a question, at what threshold do we hit a material issue that we would need to send something to the jury? And here we have, it looks like, five factors that are undisputed that weigh in favor of independent contractor. We have one, maybe two, that are disputed. But they're fairly big factors. I mean, at least under California law, the authority over who an employee may hire is determined, has been determined to be a key factor. If there's a dispute about that, is that enough on its own to send an issue to a jury? I think we get back to the fact that the employee, in this case, so-called employee, is incorporated. So it was FSC. Is that dispositive? I think it should be. I looked at the Frankel case, and I think it's intellectually inconsistent, as I think Judge Nelson, you're saying, to incorporate and disregard the corporate entity when it suits the employee. There's another case, though, Jackson v. AEG, California Court of Appeal in 2015, that says it's not dispositive whether the worker operated as his own incorporated entity. So I don't know how we could treat it as dispositive and be consistent with California law. If that's how you look at it, I would just say that it depends on the facts of each case. It can't be dispositive because every case is different. Frankel did not involve a situation where Mr. Irish had his own corporation, FSA, who, in turn, hired subcontractors or subrepresentatives. So I think the same position is. But he claims that he didn't have full control over them because your client could require him to fire them. Well, we couldn't. I don't think they could require him to fire them. They could take the position that they could approve them in the first place because these people are representing the company. There's no question that Magnuson's product and their product line, their brand, is being represented by an independent contractor. They need to control that. They need to protect that intellectual property. Well, I totally agree with that. I get that.  I don't think so. I think there's no evidence in the record that I can tell that they could fire them at will. I don't think they could even fire Mr. Irish at will. That's a fact dispute, though, probably, because he claims. I mean, so I know you say he just retired. He claims, no, I was fired. And it seems like maybe there's a fact dispute about whether you could fire him at will. Counsel admitted that if he didn't meet his quota, he could be terminated. That's not an at-will termination. It requires some basis for good cause. So that's how you would distinguish that situation. But the key elements, I think, here are that if you disregard the corporation, he worked out of his house, he could hire. Sorry, just going back to that. So I think he was meeting his quotas, right? And he says he was nevertheless fired. So is that a fact dispute on whether he could be fired? I don't think it's a fact dispute because the question is when he was hired, what was the basis upon which he could be fired? We're only talking about one factor here, right? We're talking about the factor of whether he could be fired for any reason at all. It's only one out of many. But the California courts have said it's the most important one. Well, no, the most important factor is control over the manner and means of the work is done. But some of the cases say that the best way to figure that out is whether you can fire it at will. Well, I don't think that's the case here. I don't think that's a disputed fact at all. I think what he said in his declaration is contradicted by everything he testified in his deposition on the Rodenko doctrine. What you say in your deposition controls over a contrary declaration on a summary judgment. And what do you think he said in his deposition about whether he could be fired? I don't think he took the position that he could be fired if he didn't meet his quota, as he said today. But he never took the position he could be fired for any reason at all. That never happened. Was he asked? I mean, why are you mentioning the deposition? Because I think in the deposition, I think the record shows that there was no mention that he could be fired at will. That's his terminology, that they could fire me. That's counsel's terminology. I don't think he said that. Well, was he asked that question? I'm not sure he was asked that particular question. So then it seems neither here nor there, really. I don't think it's an issue here. I don't think in the opening brief they don't make a big deal out of it. Can you tell me why? And at best it's inconsistent. Can you help me understand why California thinks that the ability to fire at will is so conclusive to be an employee? It seems totally counterintuitive to me. Well, I mean, as I see it, it's only one factor. It can't be conclusive. Well, but they seem to elevate it. Well, certain cases have elevated it. Maybe they've backed away from that now. But I don't even understand why it's a factor. I just can't understand the logic of it. And I don't know if you have anything to help me out here. It's not consistent with Borrello. I mean, that's the guiding light in this area. And that's not even the factor that Borrello focuses on. Borrello focuses on control over the manner and means of the work that's done. Could this fellow sell other people's furniture? Pardon? Could he sell other people's furniture? No, he was exclusive to he could sell other furniture. Okay, he didn't have to represent Magnuson exclusively. And he did represent, or through his sub-representatives, he could represent five other – he did represent five other companies. And that's, I think, a very, very critical factor that, as a matter of law, takes him out of the equation in terms of being an employee. They couldn't exercise any control over that? Over the subcontractors? Yeah. I don't think there's enough evidence in the record on that to say that they could fire those individuals. I think they could sit down with Mr. Irish and say, who do you propose to bring in as your sub-representative? Can we meet him? Can we talk to him? You know, we'd like to see who you're working with because he's going to be representing our brand. That's legitimate business interest. Was there a contract – I take it there was a contract that governed their relationship or not? The contract was between plaintiff Irish and furniture sales. Was it between Irish or was it between his corporation? Between the corporation. And as a matter of fact, that's how they paid. They didn't pay Irish, they paid FSA. So there was no contract that covered Magnuson and Irish as an individual? No, not that I'm aware of. Wait, sorry, are you saying there was a contract with the corporation? Yes, there was a contract with the corporation, but not with him individually. And that's how they paid him. They issued 1099s to FSA, not to him. No W-2s. So you take all of these factors and they clearly weigh very strongly in favor of an independent contractor. If we were to disagree with you, what would we do? If we said there's a material issue of fact on termination and whether – who had decision-making authority over the employees that worked with Irish, what would we do? Would we send it back and ask for a jury trial on those two questions? I don't think you have to. Well, I know you don't think we have to. I'm just trying to go into this alternate universe and just understand what we would do. I mean, would we send the – because I don't think we'd – I think you've made this point. We wouldn't send the ultimate question of whether he was an independent contractor or an employee to the jury, or perhaps we would based on certain stipulations, but – or the district court would, I guess. But would we just tell the district court to have a jury trial on those two questions? I think you could do something like that. You could have special interrogatories to the jury to make a determination on particular facts, whatever the issue and dispute is. But I don't think that the fault question, the termination question under Jackson is – You still don't think it would be material. That's the other issue. You have to have a – Even if a jury came back and said, you're right, Magnuson exercises total control and they can fire him at will, then the judge looks at that and says, okay, nice, still an independent contractor. Nice still doesn't make a difference because I'm weighing all the other factors, and they outweigh the one little factor that might make him an employee. So you said Borrello doesn't talk about the at will, but I think that's not right, because Borrello says we have noted that strong evidence in support of an employment relationship is the right to discharge at will without cause. It's a factor, but how strong is it relative to the other factors? So Borrello says that, but what does it really mean in a particular context? So one of the secondary factors is in this kind of occupation, in this locality, what is typically done. Can you tell us anything about that? What is done, I think it's in the furniture business, where especially this company manufactures the furniture in Vietnam and other countries outside the U.S. That's where it's built. And so they have to work with independent sales representatives on a commission basis throughout the country. So there's no showroom? It's all just – They have a market four times a year in which one's in North Carolina and everybody comes in from all over the country and shows their furniture lines. And so the company representatives will attend those markets and sell the product to retailers. But you're saying in this occupation, it's all just people, I guess, driving around to meet with clients, not showing them a showroom? I think – I'm not sure of the details, but I imagine they have pictures, portfolios, and other things that they show to the customers. And do you have any understanding of the employment or independent contractor relationship that people typically have with the furniture manufacturers? For other manufacturers, I don't. I don't. Unless the Court has any further questions, I would submit. Thank you. You have time for rebuttal. Thank you. There was an agreement that was attached to Magnuson's brief, S.E.R. 125 and 126, which is a sales representative agreement form between Magnuson and Irish. There was no contract, per se, between Magnuson and FSA. The fact that he did sell to – Did you say S.E.R. 125? Yes, Your Honor, 126. 126. I don't know. When I look at 125 and 126, I see final status conference and trial. It's like an order from the Court on scheduling and then proof of service. On the supplemental excerpts? Oh, supplemental. Okay. Hold on. That Magnuson filed. It's taking me a second to get there. But you're saying that this is – This is the only, quote, agreement. And it's not signed by any corporate. If you'll see the second page here, it's just signed by the individual, Mr. Irish. But it says – I mean, it does say company name, Furniture Sales Agents Incorporated. I agree. So, I mean, the company can't sign other than through someone. So I'm not sure how this really tells us one way or the other. I agree. I think it's a – well, the counsel said there was an agreement between Magnuson and FSA, and there was no contract other than these two pages. So for however many, many, many years, there was never, like, any written document about how much commission he would get or anything? Correct. So how did he know what he was supposed to get in commissions? What he customarily received and what they customarily agreed to between Irish and Magnuson. It's a range of percentages on the commission based upon this and based upon that, certain factors that were established. And just the other issue that Mr. Irish was selling to other companies for a long period of time, but for the last five years leading up to this termination, he was not. Magnuson said, we want you to sell exclusively Magnuson products, period. A point of clarification. And the fact that – last point is the fact that he was fired, even though everyone in the whole world admits he was doing his job, suggests that he was fired without cause. Any questions? Thank you, both sides, for the helpful arguments. The case is submitted.
judges: Schroeder, Friedland, Nelson